Case No. 14-1194, et al., New York Republican State Committee, et al., Petitioners v. Securities and Exchange Commission. Mr. Turchinsky for the petitioners, Mr. Berger for the respondent. Good morning, Your Honors. Jason Turchinsky on behalf of the New York and Tennessee Republican parties. May it please the Court. We're here today because the Securities and Exchange Commission enacted a regulation that exceeds the statutory authority given to it by Congress. In addition to exceeding the statutory authority given to it by Congress, the rule also violates the Constitution. But we're before you today because the SEC convinced the District Court to ignore the plain language of the statute and to dismiss the case for lack of subject matter jurisdiction. The normal default rule in this circuit is that challenges to agency action are brought in the District Court, and that is where this case belongs. The sole case on which the SEC relies to rebut this rule has never been extended to the Advisors Act, and this Court should not do so here. Did you see at page 19 of the Commission's brief, they cite a case called Goldstein v. SEC? Yes, Your Honor. The jurisdiction issue was briefed in that case, and yet we considered it in order and heard it on appellate review. That's true, Your Honor. This case, this Court did hear Goldstein. Right. Isn't that the same? It's Section 213. That's right. The Court did hear Goldstein, but in the decision there was no discussion or analysis. But it was fully briefed, and courts have obligations to assure themselves of their own jurisdiction. That's true, but this Court has told us in American Portland Cement that when jurisdictional issues aren't addressed by the Court, that those decisions aren't precedential. So, yes, the Court did hear a petition reviewing a regulation directly under AB 13 in Goldstein, but there was no discussion or analysis in the decision as to the reasons as a result. Mr. Tortorsia, why is an investment company really very squarely on point here? I mean, I know there are cases that have seemed to go otherwise, and you cite a few in your brief, but this is a statute that was really the companion statute to the statute at issue. An investment company, it's passed the very same year. It's before the Administrative Procedure Act, which creates pre-enforcement review of rules, and so it's understandable that it's referring to orders, and investment company has been our law for years. I think the reason is that investment company doesn't control because the Investment Advisors Act differs in three significant ways from the Bank Holding Company Act. First, the Advisors Act repeatedly differentiates the Commission's authority to act by rules and regulations from its authority to act by orders. For example, 203a sub c, 205e, or 210a, and in 203a sub c, it actually says, you know, the Commission may permit registration by rule or regulation upon its own motion or by order upon application. The Advisors Act includes extensive language that would be superfluous if you read orders to mean regulations in all cases, and the Advisors Act makes clear that orders follows an adjudicatory process. By contrast, in the Bank Holding Company Act, there's no distinction or even, you know, the Act consistently uses the phrase orders or regulations consistently throughout the Bank Holding Company Act. The phrase orders or regulations never appears in the same way in the Investment Advisors Act. So Congress might have passed them at the same time. But doesn't that strengthen the argument against you that even though the Bank Holding Company Act uses orders and regulations, and it uses orders only in the jurisdictional provision, the jurisdictional provision is understood to also cover rules? But the structures of the two acts are very different. In the Bank Holding Company Act, you know, orders and regulations are used interchangeably throughout the Act. In the Investment Advisors Act, they're not. For example, you know, in 202A ADB 15 U.S.C. ADB 2, you know, there are certain things that the Commission can only do by order or regulation, and there are certain things that it can do by rule or regulation, and there are certain things that it's only entitled to do by orders. And the other important distinction is in 2 U.S.C. ADB 11, you know, the statute itself distinguishes between, you know, rulemakings and then orders that happen after notice and opportunity for hearing. In the Bank Holding Company Act, by contrast, the heading in 12 U.S.C. 1844 actually says orders or regulations and sort of treats them the same. It is, in fact, the text of the Advisors Act that treats them differently. Now, if we rule against you on that ground, and if we were to find no kind of equitable tolling, I notice you in your complaint, you cite 1331. Do you have an independent basis for district court jurisdiction, given that you're raising a First Amendment claim? And if so, can you tell us a little bit about that? Sure. Our First Amendment claim is that this rule, you know, essentially chills speech by harming the First Amendment rights of the political parties and its members. It would be probably general subject matter jurisdiction of the district courts that would be an independent basis for relief. But because we're challenging the rulemaking and we're not in an enforcement context, we're seeking to be heard in front of the district court under the Administrative Procedure Act because we're bringing a facial challenge to the regulation. So you don't think you have a pre-enforcement challenge separately because you're trying to challenge the rulemaking? Your Honor, I think we've phrased this as a facial challenge to the regulation. I guess we could argue a pre-enforcement challenge as well if that need arose. We have case law that says that if there's subject matter jurisdiction, if you're wrong in this position, you can't take an alternative route to 1331. You've got to challenge it as the statute requires. So if we read orders to include this kind of a challenge, you're out of time. You don't have a 1331 option. That is true, Your Honor. And the only way then to challenge this rule would be for somebody to challenge it in an enforcement proceeding. I know the Commission has offered an alternative route, which is, oh, well, you know, file a petition for reconsideration with us, and, you know, after however long it takes us to review that petition for reconsideration, then you could come back to court if we deny your petition for reconsideration when the agency has already said over and over again they don't think that anything's changed since they've issued this rule. But in that circumstance, Your Honor, we would be back before you in a situation where the only thing we could challenge was their grounds for denial of that petition, as this Court has made clear in numerous APA cases involving petitions for rulemakings. So if we are not able to be heard before the district court, with the exception of someone challenging this in an actual enforcement action, it would be very difficult for any plaintiff to challenge this regulation. Except in an enforcement action. Except in an enforcement action. But, Your Honor, this is also the First Amendment context, where you're not supposed to have to violate the rule in order to bring a challenge to the rule. Where do we have case law that says that? The Supreme Court on numerous occasions. In the administrative law context, that's not my understanding. That's true in the administrative law context. You used to have some case law like Asimov and others where we, for a short period of time, we said if you're talking about the authority of the agency, you can bypass the normal route. But we've long since abandoned that. That is true, Your Honor. So what am I supposed to do? Shrug my shoulders and say you're stuck to wait for an enforcement action? Well, I would hope not, Your Honor. I would hope that the court would recognize, like this court did in national mining, like this court did in American Petroleum Institute, that there is a significant difference between the structure of the Bank Holding Company Act and the Investment Advisors Act. That's on your original claim. But I mean, assuming you lose that, then you have to wait for an enforcement action. Yes, and you have to, not only that, Your Honor, you have to wait for an enforcement action for somebody who, you know, where the person that is sort of where the object of the enforcement action is also willing to fight it rather than settle with the commission. And obviously, you know, these investment advisors often deal with very large numbers, and it's often a lot less expensive to settle than it is to challenge the rules. Well, that's kind of the life of existence in dealing with agencies, right? That is true. All right. I don't know what we can do about that. I mean, that's the law. If the law is, as my colleague has suggested, that there is a time limit and you've missed it, we're not here to correct that. That's what the law is. That's right, Your Honor. We're not asking you to correct it. We're asking you to send it back to the district court and reverse her on that point because the Investment Advisors Act is so dramatically different. But we can't do that if order meets order, if, in fact, we have jurisdiction. In other words, your argument is circular. You have to deal with that first. No, Your Honor, our argument isn't particularly circular. Our argument is that the Administrative Procedures Act makes a distinction. You only get a remand if order meets regulation, right? That is correct, Your Honor. Okay. Let me ask you something about the investment company. I know you think the statute is different there than the case here, but the court there said that it was the availability of a record, administrative record, for review. In other words, if the administrative record is available for review without any more development in the Court of Appeals, I'm sorry, without any more development, if you don't need a district court proceeding, if the administrative record can be directly reviewed, then that's the touchstone. So what about the record here? I didn't see anything in your brief suggesting that the record wasn't suitable. In other words, if you had filed on time, we could have reviewed the complete record. Well, Your Honor, the district – I'm sorry. You don't need district court proceedings to supplement in any way, do you? Your Honor, in the proceedings below in the district court here, the district judge actually questioned some of our evidentiary assertions, namely whether we saw – whether the plaintiffs here saw a reduction in contributions from people that were covered under the rule. And so you could – I mean, we don't think it's necessary, but you could see a situation where a district court would find that some additional factual development would actually help to supplement the record on making a final decision below. And so – Wasn't it your duty – I mean, I'm not sure if you're referring to the adequacy of the record on standing, but it was your duty to come forward in the district court with enough evidence to support standing. Can you address why under our precedents you have standing when nobody that's before the court is a directly regulated party? Your Honor, because this regulation goes directly at the political party's ability to associate with its own members. And so as a result, having an individual investment advisor in front of the court was not necessary under this court's standing precedents because of the associational standing rules. In addition, we also have in the record affidavits from – an affidavit from Senator Tracy who had two identified investment advisors, one of whom only gave him up to the de minimis contribution limit and one of whom sought a refund down to the de minimis contribution limit because they couldn't give to him because of this rule. So McManus is not – doesn't have a declaration before the court. It seems like you're still at one remove from what the statute is actually regulating. It's just unclear whether we can rely on what you've put in. Your Honor, I believe you can. I mean, the rule itself acknowledges that it's going to diminish the ability of people to make contributions. And this court, both in Taxpayers Without Representation v. Reagan and in the lower court in Buckley v. Vallejo, or in the Embank decision in Buckley v. Vallejo, found standing for parties that were – that had a demonstration that showed that they were going to have reduced contributions as a result of government action. In Buckley v. Vallejo, it was the New York Civil Liberties Union who – I mean, their whole claim was we think people are going to give less to us if they have to be disclosed. It wasn't even that they couldn't give to us. And this court found standing for the New York Civil Liberties Union. And Taxpayers Without Representation v. Reagan, this court found standing because they said, you know, it's obvious that the rule will essentially diminish the ability of this organization to collect contributions and essentially fulfill its mission. And you have the same thing with Republican parties. As the Supreme Court has acknowledged, one of the fundamental functions of political parties is pooling resources so as to achieve its political purposes. And that was in Colorado Republican. So I think there's – I think we have more than enough in the record to support standing. Does it make any difference here that, in effect, this rule is responding to a collective action problem, that the good investment advisors, the ones who will get the contracts based on their competitive merit in the market, want this rule because they don't want to have to throw away money contributing to the people who their less qualified competitors will contribute to? And so, in a sense, you're not holding back anybody who has a legitimate interest, actually, in giving. Your Honor, I think that's actually not quite the way I would view this case. I mean, for example, there's an application pending right now in front of the SEC for an exemption under this rule where someone who used to work with now Governor Bruce Rauner in his prior life, actually as an investment advisor, made a contribution to his campaign. And is that a firm that does business with the state of Illinois and made a contribution not realizing that this rule covered him? And there you have a situation where, I mean, they live in the same neighborhood. It's the personal friendship, and that's why the guy is clear from even the record in front of the SEC that that's why the guy made the contribution. Yet because of this rule that is so broad and so essentially prophylaxis upon prophylaxis, that the commission has just flat-set, if you're in this industry, we're going to limit your First Amendment rights. And that's why we think that this rule should be struck down by the court. Thank you. Good morning, Your Honors. Jeff Berger for the Securities and Exchange Commission. May it please the court, this challenge to the commission's pay-to-play rule has finally reached the right forum, but this court lacks jurisdiction because petitioners have arrived more than four years too late, and they do not have standing. As such, this court should not reach the merits. Let me go right to ICI. ICI is directly on point here. The Bank Holding Company Act, Section 9, 12 U.S.C. 1848, is nearly identical to Section 213. The main difference is that in ICI, the timeline was 30 days rather than 60 days. But other than that, they're almost word for word the same. And ICI is controlling here. It has been applied by this court consistently, which has construed the term order when it appears in the special review statute to include challenges to regulations. Mr. Berger, is it not concerning that we have here First Amendment rights of a high order and a very short limitations period, 60 days? And so there's, even though there's potential chill, there's really very, very narrow opportunity to challenge it. Do you see, you know, along the same lines as what I was asking your opponent, do you see any opportunity here to go into federal court under 1331 and just bring an injunctive action? Let me answer that. And join enforcement. Sorry, let me answer that a couple different ways. Or a few different answers. I mean, the first is this court hasn't hesitated to apply the 60-day rule when there's constitutional issues. So that alone. First Amendment issues? I do believe some of the cases weren't First Amendment issues. And I take that. I don't. Okay. I'd be interested in citations if you have them. There's two in the brief. And I do think those are not First Amendment cases. So you're right. Those are constitutional cases, but not First Amendment cases. But as for 1331, I mean, this court has said that the jurisdiction is exclusive. So if the special review statute funnels challenges to regulations to this court, that ends the inquiry. I mean, that has been this court's law. Well, it was discussed in ICI, and it was certainly strongly reaffirmed in TRAC. That's an acronym. I apologize. I can't remember. The name is TRAC versus FCC. We know the case. Yeah. But I don't think the constitutional component would be or the First Amendment aspect would be a limitation or a reason to not apply the 60-day rule. I'd also mention that even if for some reason this court were to consider diverging from precedent and using some equitable tolling doctrine or something like that, this isn't a case where these particular petitioners filed on the 63rd day. They filed in 2014. This is a 2010 rule. You know, they suggest in their brief that they needed to know the full effect of the rule, but this is a facial challenge. It's hard to really understand what it is about the rule that couldn't have been known in 2010 but is known in 2014. The rule was passed in July 2010 during an election cycle, not a presidential cycle, but an election cycle, and 2012 came and went again without any challenge to this rule. So four years is an awful long time. I'd also just mention that I don't think folks have had difficulties, and I shouldn't use folks. It's a little too colloquial. I apologize. But folks challenging rules have not had difficulty, particularly challenging commission rules, have not had difficulty meeting the 60-day rule, including when First Amendment issues are at stake. API is an example. Now, the court in API dealt with a different sort of statute, but I think the operative point there, and it's my understanding that the petitioners in that case sought review of that rule, which did have First Amendment implications, within 60 days. I just don't think this has been a problem for people trying to challenge rules, particularly when the First Amendment is involved, given the sensitivity of the rights under the First Amendment. If I could also just mention one other thing about sort of foreclosing on review or the idea this is a little bit what Judge Edwards was asking about, the enforcement or ability to challenge this. The idea that applying the 60 days here will somehow insulate this rule from all challenge simply is not correct. A challenge could be raised on an appeal from an enforcement action. It could also be challenged in an appeal from an application for an exemption. As my friend mentioned, there is an exemptive process. What governs that? I was a little curious to see that in an area that touches on the First Amendment, that it seems like this very discretionary exemption, and I wasn't sure that that made it better or maybe even made it worse, given the discretion on the part of the commission. Sure, and there's factors that are listed in the rule, including whether there's been any sort of past violations of the rule, the circumstances of a particular contribution, the circumstances or structure of the particular investment advisor. But in addition to a challenge to an example application, there is also the challenge along the lines of the process described in the ICI. This isn't something we came up with, the idea of going back to the commission. This is something this Court talked about in ICI and, as far as I can tell, has reaffirmed that that is a path to go, and I think that's a better path to take rather than sort of waiving a 60-day requirement. Well, they can also petition for ruling. Yes. Yes, that's correct. Your reasons are then subject to review. It's a favorable standard for you, but nonetheless, that certainly would be at a raise if it's a legitimate First Amendment challenge. They can petition for rulemaking on the grounds that the rule violates the Constitution. That's correct. That's my understanding as well, and I think that is a better course than waiving the 60-day or somehow finding a way to waive the 60-day limitation in Section 213. Actually, they might have a better record after a couple of years. What's that? They might have a better record for their case after a couple of years. Sorry, I didn't mean to interrupt you, Judge Taylor. That's okay. I think we were saying the same thing. Yes, I think that's right, and I think if there is somehow new information out there about the application of the rule, that's something that should come back to the commission first as opposed to this Court using it as a basis when the commission, for instance, one of the amicus briefs, or the only amicus brief filed in support of petitioners, mentions some new information, but they concede that that information wasn't before the commission at all. The commission would find it difficult to defend a rule based on information that wasn't before it, and if there really is some change to the rule, the better path is to come back to the commission. Delay is generally an ameliorative factor when we're talking about administrative processes and seeing how they unfold, but it's not something that we typically welcome when we're dealing with potential First Amendment harm. And to that end, I'd actually like you to talk a little bit about the standing question. Are these parties that are the proper parties to challenge this rule? I think the issue here, and the fundamental problem, is that there are no declarations from covered associates or investment advisors, the people directly regulated by the rule. We're not trying to make the argument that a political party would never have standing in a hypothetical case. The problem is these particular petitioners have not done the work to develop the information needed to support standing. They have a few different theories of standing, and this problem affects both theories, both the direct standing and the associational standing. If you want to talk about the direct standing, again, petitioners are not the direct object of the regulation. There's no declarations from covered associates or investment advisors, and there's no declarations of anything that says that a particular covered associate or investment advisor, one who would be affected by this rule, wants to give money but can't. With regard to the political parties, I think the reason you don't see such a declaration is that the rule doesn't prevent investment advisors or covered associates from making contributions directly to political parties. The adopting release says that several times. We talked about that in district court as well. So this isn't a situation where the rule would even prevent the harm that the political parties are claiming. When you get to associational standing, we recognize that that changes things a little bit. You're essentially looking through the association to determine whether the members upon whose interest or whose argument the association or entity is advancing, whether they themselves are standing in their own right. And the problem is, once again, here, that there are no declarations from covered associates or investment advisors. My friend spoke a little bit about the Tracy affidavit. I mean, there are two covered associates identified in that, but there's multiple problems with that declaration in terms of establishing standing. One is the chill they're talking about is only subjective chill, which is insufficient for standing. Two, there's not enough information in that declaration. And, again, there's not even the declaration from the investment advisors discussed in the Tracy declaration. Tracy's not an investment advisor. Tracy was a state senator running for the United States Congress. There's not enough information about whether those individuals even worked for investment advisors who provide services to a Tennessee government entity, such that the timeout could even serve its role of deterring contributions. Not to mention that there is the issue that Jim Tracy, excuse me, I should say Senator Jim Tracy, is not a government official who would be covered by the rules. So there's a cascade of problems with that particular declaration that means associational standing hasn't been established either. I mean, petitioners in their brief repeatedly say things like standing is self-evident, it's obvious. They sort of talk about going through the academic exercise, but in some ways that's what standing is. You have to go through that. But the Supreme Court made it clear in Summers and probably more obliquely in Lujan that it's not enough to sort of say there's a probability that there's someone out there. You have to show that there's someone out there. Petitioners have mentioned in their brief that, you know, this is New York. We're the New York Republican Party. There's lots of investment advisors in New York. Well, they need to come up with someone. They need to identify someone to give facts upon which the court can hang the spatial challenge to the rule. So for those reasons, it's a long-winded answer. That's why I don't think they've established standing. But the issue really here is a lack of information, not that a political party can never have standing. If you guys have no further questions on any of the threshold issues, I'd yield the balance of my time. Thank you. Did Mr. Torczynski have any time left? Okay, go ahead. Thank you, Your Honors. I just want to address a couple of points. One, campaign finance jurisprudence has changed significantly since this rule was issued, and in 2014 the Supreme Court decided McCutcheon v. FEC. And McCutcheon changed the campaign finance landscape for candidates and party committees in a very, very significant way. The court lifted the aggregate contribution caps. When the aggregate contribution caps were in effect, and this is where you had about $70,000-some-odd you could give to Paxton party committees over two years and about $40,000-some-odd that you could give to candidates. When the caps were in place, people in the investment advisory financial industry would tend to give to incumbent members of Congress who were not covered by the rule or would give to national party committees. With the Supreme Court striking down those aggregate limits in the spring of last year, and we brought the challenge in the middle of last year, it really changed the world for political parties and non-federal incumbent candidates who were running for federal office because it totally changed the contribution limits that major donor types and wealthy individuals were applicable to. So there was a significant intervening change in the campaign finance law here that the SEC is attempting to insulate from review. And I see that my time has expired. Thank you. Case is submitted.
judges: Tatel, Pillard, Edwards